**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DMITRI MEHLHORN,

                Plaintiff,

        -v.-

NO LABELS,

              Defendant.

Case No. 1:24-mc-00101 (EGS)

Underlying Litigation:
*No Labels v. NoLabels.com Inc.,*
No. 23 Civ. 1384 (D. Del)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DMITRI MEHLHORN'S MOTION TO QUASH NO LABELS'**
**NON-PARTY SUBPOENA OR MOTION FOR PROTECTIVE ORDER**

September 4, 2024

John C. Quinn*
Hyatt Mustefa*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
jquinn@heckerfink.com
hmustefa@heckerfink.com

Joshua A. Matz
Jackson Erpenbach*
HECKER FINK LLP
1050 K Street, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@heckerfink.com
jerpenbach@heckerfink.com
* *pro hac vice pending*

*Attorneys for Dmitri Mehlhorn*

## <u>TABLE OF CONTENTS</u>

ARGUMENT ............................................................................................................... 2

    I.     The Subpoena Requires Production of Material Protected by the
         First Amendment ................................................................................. 2

    II.    No Labels Cannot Justify the Undue Burden to a Non-Party ......................... 7

    III.   No Exceptional Circumstances Justify Transfer ........................................... 10

CONCLUSION ........................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*AF Holdings, LLC v. Does 1-1058*,
    752 F.3d 990 (D.C. Cir. 2014) ............................................................................................ 8

*AFL-CIO v. FEC*,
    333 F.3d 168 (D.C. Cir. 2003) ............................................................................................ 3

*Arista Recs., LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ............................................................................................... 4

*Basketball Mktg. Co. v. FX Digital Media, Inc.*,
    257 F. App'x 492 (3d Cir. 2007) ........................................................................................ 5

*Black Panther Party v. Smith*,
    661 F.2d 1243 (D.C. Cir. 1981) .......................................................................................... 3

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972) ............................................................................................................ 6

*Call of the Wild Movie, LLC v. Does 1-1,062*,
    770 F. Supp. 2d 332 (D.D.C. 2011) ................................................................................... 3

*Citizens United v. FEC*,
    558 U.S. 310 (2010) ............................................................................................................ 6

*Donald J. Trump for President, Inc. v. WP Co. LLC*,
    No. 20-CV-626, 2023 WL 1765193 (D.D.C. Feb. 3, 2023) ............................................... 6

*Everytown for Gun Safety Action Fund, Inc. v. Defcad, Inc.*,
    No. 21-CV-8704, 2021 WL 5232581 (S.D.N.Y. Nov. 9, 2021) .......................................... 3

*Farah v. Esquire Mag.*,
    736 F.3d 528 (D.C. Cir. 2013) ............................................................................................ 5

*FDIC v. Galan-Alvarez*,
    No. 15-MC-752, 2015 WL 5602342 (D.D.C. Sept. 4, 2015) ...................................... 10, 11

*Gonzales v. Madigan*,
    990 F.3d 561 (7th Cir. 2021) .............................................................................................. 7

*Hood v. City of Chicago*,
    No. 19-MC-123, 2019 WL 5295169 (D.D.C. Oct. 18, 2019) ...................................... 10, 12

*Iancu v. Brunetti*,
   588 U.S. 388 (2019) ................................................................................. 5

*In re Braden*,
   344 F. Supp. 3d 83 (D.D.C. 2018) ........................................................... 12

*In re I.M. Wilson, Inc.*,
   No. 21-MC-122, 2022 WL 1239905 (D. Del. Apr. 27, 2022) ................... 10

*In re Micron Tech., Inc. Sec. Litig.*,
   264 F.R.D. 7 (D.D.C. 2010) ...................................................................... 8

*In re Mot. to Compel Compliance with Subpoena Direct to Dep't of Veterans Affs.*,
   257 F.R.D. 12 (D.D.C. 2009) .................................................................... 3

*In re Subpoena on Sorrento Therapeutics, Inc.*,
   No. 17-CV-2442, 2018 WL 788899 (S.D. Cal. Feb. 8, 2018) .................. 12

*In re Subpoena Served on Clark Realty Cap., L.L.C.*,
   No. 23-MC-49, 2023 WL 8005096 (D.D.C. Nov. 17, 2023) ..................... 11

*In re Subpoena to National Academy of Sciences*,
   347 F.R.D. 45 (D.D.C. 2024) .................................................................... 13

*Int'l Union, United Auto. Workers v. Nat'l Right to Work Found.*,
   590 F.2d 1139 (D.C. Cir. 1978) ................................................................ 3

*Isola USA Corp. v. Taiwan Union Tech. Corp.*,
   No. 12-CV-01361, 2015 WL 5934760 (D. Mass. June 18, 2015) ............. 11

*Jones v. Markiewicz-Qualkinbush*,
   892 F.3d 935 (7th Cir. 2018) .................................................................... 7

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
   838 F.2d 1287 (D.C. Cir. 1988) ................................................................ 6

*Lipman v. Antoon*,
   284 F. Supp. 3d 8 (D.D.C. 2018) .............................................................. 12

*Matal v. Tam*,
   582 U.S. 218 (2017) ................................................................................. 5

*Metromedia, Inc. v. City of San Diego*,
   453 U.S. 490 (1981) ................................................................................. 6

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) ............................................................................. 1, 6

*Nichols v. Club for Growth Action*,
    235 F. Supp. 3d 289 (D.D.C. 2017) .................................................................. 5

*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984) ........................................................................ 7

*Org. for a Better Austin v. Keefe*,
    402 U.S. 415 (1971) ........................................................................................ 6

*Phillips & Cohen, LLP v. Thorpe*,
    300 F.R.D. 16 (D.D.C. 2013) ...................................................................... 4, 8

*Third Way v. No Labels*,
    No. 24-MC-97 (D.D.C. Aug. 6, 2024) .......................................................... 12

*Thomas v. News World Commc'ns*,
    681 F. Supp. 55 (D.D.C. 1988) ...................................................................... 6

*Va. Dep't of Corr. v. Jordan*,
    921 F.3d 180 (4th Cir. 2019) .......................................................................... 7

*Vindman v. Trump*,
    No. 22-CV-257, 2022 WL 16758575 (D.D.C. Nov. 8, 2022) ......................... 6

*Watts v. United States*,
    394 U.S. 705 (1969) ........................................................................................ 6

*Wultz v. Bank of China, Ltd.*,
    304 F.R.D. 38 (S.D.N.Y. 2014) ................................................................... 12

*Wyoming v. U.S. Dep't of Agric.*,
    208 F.R.D. 449 (D.D.C. 2002) .................................................................. 2, 7

*XY, LLC v. Trans Ova Genetics, L.C.*,
    307 F.R.D. 10 (D.D.C. 2014) ...................................................................... 12

## FEDERAL RULES

Fed R. Civ. P. 45 ............................................................................................. 10, 13

## OTHER AUTHORITIES

9A Wright & Miller, Federal Practice & Procedure § 2463.1 (3d ed.) ......................... 11

For a group called No Labels, Defendant sure likes to put labels on things. People who advocate for their genuinely held beliefs are "operatives," Opp. 1, 3, 13, 16, 17;[1] people who associate with others in the service of those beliefs are "conspiring," Opp. 10; and, of course, anyone who organizes against No Labels is a "criminal," DOJ Letter at 1, 6. No Labels amps up the rhetoric because it cannot overcome the First Amendment protections (and non-party protections) that bar its subpoena. The Opposition also picks out and repeats a few bombastic phrases from emails written to—not by—Mr. Mehlhorn. But courts do not invade individuals' First Amendment rights based on "strong language"; they require a showing of actually "unlawful conduct." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982). And the only unlawful conduct alleged in the Delaware Action is the promulgation of the short-lived www.nolabels.com website. In all the Opposition's lengthy discussion of the discovery taken to date—including party discovery and depositions of three non-parties—the most striking fact is the complete absence of any suggestion that Mehlhorn was actually involved in (or even knew of) the creation or operation of that website.

Instead, the record reflects politically-minded citizens taking part in associational activity to express their profound disagreement with No Label's political strategy around an attempted 2024 presidential ticket. That is quintessential First Amendment activity, and it is telling that the Opposition does not address the First Amendment until page 17, and then devotes 2 pages to it. Nor does No Labels try to defend its effort to have its political opponents investigated by the Justice Department, or deny that its goal here is to exact retribution against its political opponents.

---

[1] "Opp." or "the Opposition" refers to No Labels' Opposition to Dmitri Mehlhorn's Motion to Quash No Labels' Non-Party Subpoena or Motion for Protective Order, ECF 7-1, 8. "Mot." or "Motion" refers to the Memorandum of Law in Support of that Motion, ECF 1-1. Capitalized terms have the meaning given to them in the Motion, unless indicated otherwise.

Given the clear impermissibility of No Labels' subpoena under this Circuit's precedent (binding in the jurisdiction where Mehlhorn engages in associational political activity, and where compliance is sought), the Opposition asks this Court to transfer this action to the District of Delaware. But no exceptional circumstances justify transfer. Mehlhorn's motion presents a pure question of law to be resolved based on settled First Amendment principles, not on factual "complexities" of the underlying Delaware Action (which is, by any measure, straightforward). Under Rule 45, Mehlhorn is entitled to vindicate his First Amendment rights where he spoke.

## ARGUMENT

### I.    The Subpoena Requires Production of Material Protected by the First Amendment

The Mehlhorn Subpoena targets information at the core of First Amendment protection, including private discussion of political tactics, the attendee lists and minutes of confidential strategy meetings, information about donors, and communications with like-minded individuals and organizations—all of which this this Circuit has long protected from disclosure, especially when such disclosure is sought from non-parties. Mot. 8-13. The Opposition concedes that No Labels seeks communications protected by the First Amendment. Opp. 17. It has not a word to say about the fact that No Labels urged the Department of Justice to prosecute Mehlhorn and like-minded individuals opposed to No Labels for their political activity, *see* Mot. 2, 14 (citing DOJ Letter). And the Opposition does not address (let alone contest) the burden that the Mehlhorn Subpoena threatens to impose on the speech, collaboration, and advocacy efforts of IIU participants, partners, and donors. *See* Mot. 14 (citing Mehlhorn Decl. ¶¶ 26, 29-30).

Further, while the Opposition acknowledges that, in order to overcome First Amendment protection, No Labels bears the burden to prove that the protected information it seeks is not only *relevant* but goes to "the heart of," and is "crucial to," its Delaware Action, Mot. 14 (quoting *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 453, 455 (D.D.C. 2002)), it makes no attempt

to meet that standard. Far from pointing to specific evidence at "the heart of," or "vital to," its claims, No Labels makes the conclusory statement that Mehlhorn may possess information that could "flesh out a pattern of facts already known" to No Labels. Opp. at 2, 5, 18 (quoting *In re Mot. to Compel Compliance with Subpoena Direct to Dep't of Veterans Affs.*, 257 F.R.D. 12, 17 (D.D.C. 2009)). That is not enough to burden a non-party, especially not over clear-cut First Amendment rights. *See Dep't of Veteran Affs.*, 257 F.R.D. at 19 (quashing subpoena as unduly burdensome).

Rather than confront the fatal First Amendment problem that dooms No Labels' Subpoena, the Opposition makes three efforts to dodge it. All three fail.

*First*, the Opposition misses the point entirely when it argues that the First Amendment does not protect a right to anonymity to mask the infringement trademarks. Opp. 17. Mehlhorn— whose name captions this action—does not claim any right to remain anonymous. Rather, he invokes the distinct First Amendment right not to be compelled to disclose his political strategy, associations, and donor information to his political opponent, in an election year, a right this Circuit has repeatedly recognized. *See, e.g.*, *AFL-CIO v. FEC*, 333 F.3d 168, 177-78 (D.C. Cir. 2003); *Black Panther Party v. Smith*, 661 F.2d 1243, 1265-66 (D.C. Cir. 1981); *Int'l Union, United Auto. Workers v. Nat'l Right to Work Found.*, 590 F.2d 1139, 1147-48 (D.C. Cir. 1978). The Opposition cites a single, irrelevant in-circuit case, Opp. 18, which granted a request to unmask anonymous defendants who unlawfully downloaded plaintiff's movie, reasoning that obtaining free movies was only minimally "expressive activity," *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 349, 353-54 (D.D.C. 2011). That precedent simply has no application here. And the Opposition's out-of-circuit cases are even farther afield. *See Everytown for Gun Safety Action Fund, Inc. v. Defcad, Inc.*, No. 21-CV-8704, 2021 WL 5232581, at *1-2 (S.D.N.Y. Nov. 9, 2021) (denying stay of expedited discovery into anonymous defendants that downloaded plaintiff's

trademarked files); *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 114, 119, 124 (2d Cir. 2010) (upholding denial of motion to quash subpoena to internet service provider for identities of defendants that illegally downloaded music).

*Second*, the Opposition suggests that the allegation of trademark infringement in the Delaware Action exempts No Labels' subpoena from the strictures of the First Amendment. Opp. 6, 18. But Mehlhorn is not a party to the Delaware Action, and No Labels has not alleged any infringement on his part. The Opposition suggests that it should get to take the discovery first, and offer a basis later, *see* Opp. 18, but that is backward: as a matter of law, a non-party subpoena may not be used to "gather information for use in evaluating, and perhaps litigating, a claim against [a non-party]," *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18 (D.D.C. 2013); *see* Mot. 20-21.

The Opposition insists that "the suspicion" of some "infringing conduct" on Mehlhorn's part "is not unfounded," Opp. 17-19, but the facts say otherwise. To start, No Labels does not question Mehlhorn's sworn statement that he had "no involvement in the formation of Nolabels.com Inc., the purchase of the nolabels.com domain, or the creation of the website at the nolabels.com domain." Opp. 6 (quoting Mehlhorn Decl. ¶ 10). Nor could it. The Opposition cites to several proposals Mehlhorn received about No Labels, but none mention the Domain. *See, e.g.*, Exs. A, B & U to Decl. of M. Lytle.[2] No Labels has also now deposed the three individuals who admit to creating the website at the center of the Delaware Action. Exs. E, P, X to Decl. of M. Lytle. Yet No Labels does not point to any evidence that Mehlhorn knew about—let alone *participated in*—the website's purchase, creation, or contents. *See* Opp. 11; *e.g.*, Ex. P at 62:24-63:4, 71:24-72:6, 137:1-6, 224:2-9; Ex. X at 20:4-8, 23:12-16, 27:19-25. Much of the Opposition

---

[2] The Opposition also claims that "Mehlhorn … delivered a proposal to Caldwell to help bring this plan to fruition," Opp. 16, but that claim is uncited, and the record demonstrates only that Caldwell delivered proposals *to* Mehlhorn, *e.g.*, Exs. A, B, U to Decl. of M. Lytle.

focuses on a pitch deck about the contents of the Domain, yet No Labels never alleges that Mehlhorn even saw this pitch deck. Opp. 4. No Labels does not claim Mehlhorn provided funding for the purpose of developing or maintaining the website, or even that he increased funding at the time the website was created. On these facts, No Labels cannot hang its subpoena on an imagined claim that Mehlhorn knowingly contributed to the alleged infringement. *See Basketball Mktg. Co. v. FX Digital Media, Inc.*, 257 F. App'x 492, 495 (3d Cir. 2007) ("Inadvertent participation in infringing activities does not give rise to contributory liability.").[3]

*Third*, the Opposition contends that Mehlhorn and those he associates with are not entitled to First Amendment protections because their aim was to ████████ No Labels' political brand— to make it ████████████████████████████ 'to create a social stigma around [No Labels]," and to "shame" its donors and supporters, all with the intent "to steer voters, donors, officials, and the public away from No Labels." Opp. 1, 3, 10, 17. First, none of these words are attributable to Mehlhorn. Indeed, throughout the entire Opposition, not a single quote that No Labels points to as evidence of infringing intent is attributable to Mehlhorn; nor is a single quote that mentions the Domain. Moreover, to the extent Mehlhorn and others otherwise sought to "steer voters, donors, officials, and the public away from No Labels[,]" Opp. 1, a plan to discredit and defeat one's political opponent is not illegal. It represents typical (and protected) "political rough-

---

[3] The Opposition's uncited assertion that "[t]he First Amendment does not protect 'speech' that violates the Lanham Act," Opp. 6, is further belied by any number of court decisions invalidating the Lanham Act's application to protected speech, *see, e.g.*, *Matal v. Tam*, 582 U.S. 218, 223 (2017); *Iancu v. Brunetti*, 588 U.S. 388, 390 (2019). Indeed, this Circuit (like every circuit to address the issue) has held that the Lanham Act applies only to commercial speech and not to a claim of trademark infringement that rests on political speech. *See Farah v. Esquire Mag.*, 736 F.3d 528, 541 (D.C. Cir. 2013) (misleading parody article "was political speech aimed at critiquing [public individuals'] position"); *Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 298-99 (D.D.C. 2017) (Lanham Act did not apply to "political speech expressing a point of view, [as opposed to] commercial speech").

and-tumble—*i.e.*, that each side wants to present itself as credible and the other as not." *Vindman v. Trump*, No. 22-CV-257, 2022 WL 16758575, at *9 (D.D.C. Nov. 8, 2022).

To be clear, the First Amendment does not shield only political activity that is polite or that accords with No Labels' subjective sense of fair play. Indeed, "[t]he language of the political arena … is often vituperative, abusive, and inexact." *Watts v. United States*, 394 U.S. 705, 708 (1969). And "[s]peech does not lose its protected character … simply because it may embarrass others or coerce them into action." *Claiborne Hardware*, 458 U.S. at 910. In case after case, the Court has protected speech that advances a political goal through "social pressure," "'coercive' speech," and even "'threats' of 'social ostracism, vilification, and traduction.'" *Id.* at 910-11, 921; *see Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) ("The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment.").[4]

Indeed, courts in this Circuit regularly extend First Amendment protection to political speech and partisan tactics that others find to be crude, offensive, or untoward. *See, e.g.*, *Thomas v. News World Commc'ns*, 681 F. Supp. 55, 65 (D.D.C. 1988) ("Plaintiffs may well confuse political opposition with malice. … [L]anguage referring to 'garbage,' 'bums,' and 'lunatics' is certainly strong. Yet, such language reflects … the timbre of argument characteristic of a robust political press addressing public figures …."); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1300 (D.C. Cir. 1988) ("[W]hat is a crude and ugly appeal to some, may be forthright and vigorous advocacy to others."); *Donald J. Trump for President, Inc. v. WP Co. LLC*, No. 20-CV-

---

[4] The alleged "coordinated effort to destroy No Labels brand," Opp. 16; Ex. A to Decl. of M. Lytle, apparently spanned a wide array of First Amendment–protected activity, *e.g.*, *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) (petitioning courts and agencies); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 493, 521 (1981) (billboard campaign); *Citizens United v. FEC*, 558 U.S. 310, 370-71 (2010) (publicizing public donor information).

626, 2023 WL 1765193, at *7 (D.D.C. Feb. 3, 2023) ("hyperbolic and colorful tone … is typical

fare one finds in 'heated political debate' and criticism about a presidential candidate").

In short, "'[p]olitics is a rough-and-tumble game, where hurt feelings and thwarted

ambitions are a necessary part of robust debate. It is impossible to imagine the judiciary attempting

to decide when a politically retaliatory step goes "too far" without displacing the people's right to

govern their own affairs and making the judiciary just another political tool for one faction to wield

against its rivals.'" *Gonzales v. Madigan*, 990 F.3d 561, 564 (7th Cir. 2021) (dismissing claim that

political candidate's opponents conspired to place sham candidates on ballot) (quoting *Jones v.

Markiewicz-Qualkinbush*, 892 F.3d 935, 939 (7th Cir. 2018)). Put another way: "Those who step

into areas of public dispute … must be willing to bear criticism, disparagement, and even

wounding assessments. Perhaps it would be better if disputation were conducted in measured

phrases and calibrated assessments, and with strict avoidance of the ad hominem …. But that is

not the world in which we live, ever have lived, or are ever likely to know, and the law of the first

amendment must not try to make public dispute safe and comfortable for all the participants."

*Ollman v. Evans*, 750 F.2d 970, 993 (D.C. Cir. 1984) (Bork, J., concurring).

## II.    No Labels Cannot Justify the Undue Burden to a Non-Party

The subpoena also founders on basic discovery rules, and the Opposition's efforts to defend

it rely on the wrong legal standard and describe a case that No Labels has not brought. As to the

standard, the Opposition cites the typically broad scope of discovery under Rule 26, Opp. 17, but

does not address the specific rules and principles that govern discovery from non-parties, Mot. 18-

19 (citing *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019); *Wyoming*, 208 F.R.D.

at 452). For one, No Labels is obligated to first seek documents through party discovery before it

burdens non-party Mehlhorn. Mot. 16-17. Yet No Labels does not tell the Court what documents

it has sought or obtained in the Delaware Action or provide any basis for its apparent belief that

Mehlhorn possesses communications that No Labels cannot obtain elsewhere. And No Labels does not dispute that some of its requests exceed the scope of discovery that the Special Master has allowed against the actual Defendant in the Delaware Action. Mot. 16.

No Labels also tries to reshape the case it brought and from which the subpoena arises. Although every claim in the Delaware Action relates directly to the Domain, Compl. ¶¶ 38-68, the Opposition now disclaims that the Delaware Action "is only about the mechanics of the Nolabels.com website" and identifies the website as "only the most public manifestation of the coordinated attempt to intentionally misrepresent [No Labels]." Opp. 6. But, again, courts in this Circuit do not enforce subpoenas on the basis of hypothetical lawsuits not yet filed or on the chance that a non-party will later face a claim. *See Phillips & Cohen*, 300 F.R.D. at 19; *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014).[5]

On the other side of the scale, while No Labels pays lip service to the notion that courts in this Circuit must be especially "sensitive" to costs imposed on non-parties, Mot. 22 (quoting *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010)), the Opposition spends no time addressing the undue burden of its subpoena to Mehlhorn, including substantial costs to collect and review potentially relevant documents, a process that is further complicated by the First Amendment and attorney-client privileges at play. *See* Mot. 21-22; Mehlhorn Decl. ¶¶ 31-35.

That burden is not solved by No Labels' purported attempt to narrow its requests, which remain extraordinarily broad.[6] For example, No Labels requests a search for all documents and

---

[5] And, as is relevant to transfer, *infra* pp. 11-12, Judge Williams and Special Master Brauerman of course have no "unique" insight into causes of action that No Labels has not brought in the Delaware Action. *Contra* Opp. 13.

[6] As described in Mehlhorn's Motion, No Labels acknowledged in a meet and confer session, Mot. 7; Decl. of John C. Quinn ¶ 4, and concedes again in its Opposition, that even its purportedly narrowed requests do not attempt to limit the Mehlhorn Subpoena to documents and

communications of "('No Labels' OR 'NL') /10 trump" and "/10 MAGA," Opp. 21-22, which is highly likely to produce First Amendment–protected communications given that Mehlhorn's organizing against No Labels was motivated by his belief that No Labels' candidacy was likely to help reelect former President Trump, *see* Mehlhorn Decl. ¶ 5. And requests for "No Labels" or "NL" within 10 words of negative adjectives like "problematic," "fringe," "extreme," and "crazy," Opp. 22, are similarly geared toward obtaining frank political discussions between Mehlhorn and those he associates with about No Labels—not unique evidence of actionable infringement.[7] Moreover, No Labels continues to request the entirety of Request 3, Opp. 20, which includes all mentions of No Labels between Mehlhorn and individuals and groups with which he associates, without any connection at all to the allegedly infringing website.

The wide-ranging nature of No Labels' fishing expedition is alone enough to quash its subpoena. But the lack of any reasonable fit between the conduct at issue in the Delaware Action and No Labels' proposed search terms is further reason to quash the subpoena on First Amendment grounds.

---

"communications relating directly to Plaintiff's claims." Opp. 23. Instead, No Labels continues to insist that it can also seek documents related to its theory of a "targeted and coordinated effort to destroy the No Labels' brand" perpetrated by "various political operatives," *id.*, including several individuals and groups who, like Mehlhorn, are not parties to the Delaware Action. This is, of course, the subject of No Labels' unacknowledged DOJ Letter, rather than any cybersquatting or trademark infringement claim alleged in the Delaware Action. No Labels' mention of attempted narrowing is further undercut by its refusal to engage in any negotiation of search terms beyond its own proposal, and its abrupt declaration that the parties had reached "an impasse" before even answering Mehlhorn's clarifying questions about custodians and platforms. Mot. 8; M&C Exch. at 9-10.

[7] These requests are not justified merely because the word "problematic" appeared in a pitch deck that No Labels has not even alleged that Mehlhorn saw. Opp. 22. Moreover, as explained above, *supra* pp. 5-7, these searches are not relevant simply because No Labels disagrees with (or is offended by) these descriptions of its political positions.

### III.    No Exceptional Circumstances Justify Transfer

Given the clear impermissibility of No Labels' subpoena under this Circuit's precedent, it is no surprise that the Opposition asks this Court to transfer Mr. Mehlhorn's action to the District of Delaware. But the Federal Rules of Civil Procedure impose "a presumption that subpoena-related disputes be litigated in the district designated for compliance." *FDIC v. Galan-Alvarez*, No. 15-MC-752, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015). And so, under Rule 45, this Court may transfer a motion to the issuing court only under "exceptional circumstances." Fed. R. Civ. P. 45(f). "The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment; *see also id.* ("To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) ...."). And "the proponent of transfer bears the burden of showing that such circumstances are present." *Id.*

No Labels does not meet that burden here. Mehlhorn's motion to quash is not about the details of the Delaware Action, but about whether the First Amendment permits No Labels to use its narrow trademark claim to chase the internal strategies and communications of its political opponents. Mehlhorn is entitled under Rule 45 to vindicate his rights in his home jurisdiction, where he works and advocates. *See In re I.M. Wilson, Inc.*, No. 21-MC-122, 2022 WL 1239905, at *2 (D. Del. Apr. 27, 2022) (denying transfer where subpoena recipient "has organized itself under the laws of Delaware and has an interest in resolving this dispute locally").

Indeed, the First Amendment's fundamental limits on non-party discovery of political communications presents exactly the kind of pure question of law that courts in this Circuit find to be inappropriate for transfer. *E.g.*, *Hood v. City of Chicago*, No. 19-MC-123, 2019 WL 5295169, at *3 (D.D.C. Oct. 18, 2019) (denying transfer and quashing subpoena where objection was based

on reporter's privilege under First Amendment, even where underlying litigation "has been pending for several years and the court has ruled on a number of discovery motions in that time"); *Galan-Alvarez*, 2015 WL 5602342, at *1-3 (denying transfer and quashing subpoena that presented "a legal question severable from the merits of the underlying litigation," even where transferee court was "intimately familiar with" the case and had "already issued two discovery orders"); *In re Subpoena Served on Clark Realty Cap., L.L.C.*, No. 23-MC-49, 2023 WL 8005096, at *2 (D.D.C. Nov. 17, 2023) ("This is not a complex issue requiring a transfer.").

The Opposition observes that the District of Delaware is more familiar with the facts of No Labels' trademark claims against Nolabels.com Inc. Opp. 13. But given that the transferee court will always have greater familiarity with the case it is overseeing, that is hardly an *exceptional* circumstance. *See* 9A Wright & Miller, Federal Practice & Procedure § 2463.1 (3d ed.) ("The 'exceptional circumstances' standard was selected to ensure that transfer is a rare event."). If that were enough, then in every case "the [transfer] exception would swallow the rule" in favor of local resolution of subpoena motions. *Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 12-CV-01361, 2015 WL 5934760, at *3 (D. Mass. June 18, 2015), *R&R adopted*, 2015 WL 5944286 (D. Mass. Feb. 2, 2015).

No Labels also points to the entry of a standard protective order, Opp. 13-14, which is before this Court in its entirety, Ex. C to Decl. of M. Lytle. But No Labels offers no explanation for why the order weighs on the merits of Mehlhorn's First Amendment privilege or affects this Court's ability to protect that privilege. The protective order is an especially poor excuse to transfer given No Labels' request to this Court to "remove the 'Confidential' designations" on those documents relevant to deciding this motion. Opp. 2.

At bottom, the Delaware Action is not exceptionally complex. It involves a single suit between two parties, a total of three claims (one for cybersquatting and two for trademark), and it

was filed only nine months ago. *See* Compl. ¶¶ 38-68; *Lipman v. Antoon*, 284 F. Supp. 3d 8, 11 (D.D.C. 2018) (Sullivan, J.) ("a year … is much shorter than other cases warranting transfer"). To be sure, the District of Delaware has resolved several discovery disputes. But No Labels has not identified any pending non-party disputes in the Delaware Action that could conflict with this Court's granting of Mehlhorn's motion. And Special Master Brauerman's oral resolution of a consultant-client confidentiality objection during a deposition (one that Mehlhorn did not raise in written objections to the subpoena) is hardly grounds for inconsistency. Ex. E to Decl. of M. Lytle at 104:24-106:12. Indeed, inconsistent results are especially unlikely here given that five identical subpoenas are centralized before this Court. *See Third Way v. No Labels*, No. 24-MC-97 (D.D.C. Aug. 6, 2024), ECF 2.

Left unaddressed in the Opposition is the "prime concern" of Rule 45: the burden of transfer to Mehlhorn. Because No Labels carries the burden to justify transfer, Mehlhorn need not identify any burden to himself. *See In re Subpoena on Sorrento Therapeutics, Inc.*, No. 17-CV-2442, 2018 WL 788899, at *3 (S.D. Cal. Feb. 8, 2018). But the burden here to Mehlhorn far exceeds the burden in cases where this Court has transferred subpoenas. Mehlhorn is a natural person, not a corporate entity with a wide litigation footprint; he does not have Delaware counsel; and there is no overlap between counsel in this action and counsel in the Delaware Action. *Contra Lipman*, 284 F. Supp. at 9, 11 (same counsel in both actions); *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014) (recipient was "a national corporation rather than an individual resident of the local jurisdiction").[8] Mehlhorn also has not participated in any way with

---

[8] The Opposition does not cite any analogous case. Opp. 12-13. In *Wultz v. Bank of China, Ltd.*, Israel moved to quash a subpoena related to six other cases that had been pending in New York for five years and raised "highly complex and intricate" questions arising out of a series of terrorist attacks. 304 F.R.D. 38, 40, 46 (S.D.N.Y. 2014); *see also Hood*, 2019 WL 5295169, at *3 (distinguishing *Wultz*). And in *In re Braden*, one subpoena recipient actually requested transfer;

the Delaware Action. *Contra In re Subpoena to National Academy of Sciences*, 347 F.R.D. 45, 49

(D.D.C. 2024) (noting that subpoena recipient "participated in [the underlying action] discovery

conferences and observed [a] deposition … demonstrating familiarity with the litigation at issue.")

Ultimately, No Labels' desire to get out of this Court does not "outweigh the interests of

the nonparty served with the subpoena in obtaining local resolution of the motion." Fed. R. Civ.

P. 45(f) advisory committee's note to 2013 amendment.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Mehlhorn's opening brief, the Court

should quash No Labels' non-party subpoena or, in the alternative, enter a protective order.[9]


Dated: September 4, 2024

John C. Quinn\*
Hyatt Mustefa\*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
jquinn@heckerfink.com
hmustefa@heckerfink.com

Joshua A. Matz
Jackson Erpenbach\*
HECKER FINK LLP
1050 K Street, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@heckerfink.com
jerpenbach@heckerfink.com

---

the court emphasized "the underlying action's complexity" in which "Plaintiffs ha[d] asserted a
theory that is on the cutting edge of constitutional law"; and the relevance objections to the
subpoena raised highly fact-bound questions. 344 F. Supp. 3d 83, 85, 91, 93 (D.D.C. 2018).

[9] Mehlhorn has not asked this Court to quash any subpoena received by Rae Steward, including
ostensibly on behalf of IIU, which (in any event) would need to be resolved in the district where
compliance is required. Opp. 3 n.2; Fed. R. Civ. P. 45(d)(3). As Mehlhorn explained in his
declaration, IIU is "an un-incorporated association of individuals." Mehlhorn Decl. ¶ 3.

*pro hac vice pending*

*Attorneys for Dmitri Mehlhorn*